UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ISLAND PARK, LLC,

                                    Plaintiff,

        -against-                                                    1:06-CV-0310 (LEK/RFT)

CSX TRANSPORTATION, INC., CONSOLIDATED
RAIL CORPORATION, NATIONAL RAILROAD
PASSENGER SERVICE CORPORATION ("AMTRAK"),
THOMAS J. MADISON, JR., in his capacity as
Commissioner of the State of New York Department of
Transportation, and DENNISON P.
COTTRELL, in his capacity as Director of the Passenger
and Freight Safety Division of New York Department of
Transportation,

                                    Defendants.

---

## DECISION AND ORDER

### I.      BACKGROUND

        This Court has received a Mandate from the Court of Appeals for the Second Circuit in the

above captioned matter.  Dkt. No. 79; see also Island Park, LLC v. CSX Transp., Inc., 559 F.3d 96

(2d Cir. 2009).  Therein, the Second Circuit reviewed this Court's June 26, 2007 Order (Dkt. No.

82).  That June Order denied Plaintiff's Motion for summary judgment, but *sua sponte* granted

summary judgment in favor of the Plaintiff on the preemption claim and permanently enjoined (1)

the State Defendants from employing section 97 of the New York Railroad Law to order the closure

of the contested crossing, and (2) the Railroad Defendants "from under taking any actions to

barricade [the crossing] pursuant to the order issued by the State Defendants."  Island Park, LLC v.

CSX Transp., Inc., No. 1:06-CV-310, 2007 WL 1851784, at *15 (N.D.N.Y. June 26, 2007).[1] As a

result of granting summary judgment to the Plaintiff on the basis of preemption, this Court did not

reach the merits of and dismissed as moot the Plaintiff's fourth claim, which sought to enforce a

1989 state court judgment concerning the crossing. Id. at *14. By Mandate issued August 10, 2009,

the Second Circuit reversed the Judgment of this Court and remanded the case. Mandate (Dkt. No.

79) at 24. The Second Circuit ordered this Court to enter summary judgment in favor of Defendants

on Plaintiff's preemption claim and proceed to address Plaintiff's fourth claim, the sole remaining

claim raised by Plaintiff. Defendants have moved for summary judgment on that claim. See Dkt.

No. 96. Additionally, this Court previously dismissed as moot Defendants' counterclaim for

declaratory judgment (Dkt. No 12), which Defendants have renewed in part within their Motion for

summary judgment (Dkt. No. 96). The Court now considers Plaintiff's fourth claim and Defendants

Motion for summary judgment and declaratory judgment.

 Plaintiff's Fourth Cause of Action seeks to enforce a June 21, 1989 State Court Order

("1989 Order"). By way of brief background, the parties reached a settlement in 1988 that required

Defendant Conrail to restore the crossing, pay to the Abeles a certain sum of money, and to "cease

and desist from interfering with said crossing of the plaintiffs and their predecessors and successors

in interest from now until all time." CSXT Statement of Material Facts at 25 (Dkt. No. 38, Attach.

5). On June 21, 1989, the New York State Supreme Court reduced the stipulation to an order and

directed Conrail to "restore the railroad crossing and maintain said crossing in the preset and in the

future at defendant's sole expense." Id. at 26-27. Pursuant to the 1989 Order, it is undisputed that

---

[1] See Island Park, LLC v. CSX Transp., Inc., No. 1:06-CV-310, 2007 WL 1851784
(N.D.N.Y. June 26, 2007) and Island Park, LLC v. CSX Transp., Inc., 559 F.3d 96 (2d Cir. 2009),
for a full recitation of the underlying facts.

CSXT and Conrail maintained and made certain improvements to Abele's Crossing.  Id. at 28.

According to Island Park, the crossing has been used as a private farm on a continuous basis from

1989 to the present.  Buono Aff. at 21-24 (Dkt. No. 45, Attach. 4).

In 1994, the New York State Legislature enacted section 97 of the Railroad Law, enabling,

*inter alia*, the Commissioner of Transportation to order the closure of private rail crossings located

on intercity passenger rail lines.  Railroad Law § 97(3).  Following the review of a class of railroad

crossings which included that used by the Plaintiff, the New York Department of Transportation

initiated the process of determining whether Plaintiff's crossing should be altered or closed.

Ultimately, the New York State Supreme Court, Appellate Division, Third Department reviewed

and upheld the New York State Department of Transportation's decision that public safety required

closure of the crossing.  Matter of Island Park v. New York State Department of Transportation, 61

A.D.3d 1023, 1025-26 (3d Dept. 2009).  At issue, then, is whether the 1989 New York State

Supreme Court order that Conrail and its successors, now CSXT, maintain the crossing may prevent

implementation of New York State Department of Transportation's decision that CSXT close that

crossing.


## II.    DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  Courts applying this standard must "resolve all ambiguities, and credit

all factual inferences that could rationally be drawn, in favor of the party opposing summary

judgment." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec.

Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party meets its initial burden by

demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show

that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come

forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at

251 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to

overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W.

World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

  The Court finds that the Defendants are entitled to summary judgment.  There is no genuine

issue as to a material fact and no legal ground that would permit Plaintiff to prevail on its claim, and

accordingly, judgment must be granted in favor of Defendant as a matter of law.

  Plaintiff's arguments in opposition to summary judgment rest on a flawed premise: an

unreasonably expansive view of the terms of the 1989 Order.  Plaintiff argues that the 1989 Order

"required CSX to take measures to 'maintain' the Crossing in the future to ensure that the Crossing

*remains* opens for the farmer's use." Response (Dkt. No. 97) at 1 (emphasis in original).  Island

Park reasons that "CSX violated the terms of the court-ordered injunction" by failing to make

whatever modifications would be necessary to keep the crossing open as well as by failing to oppose

the DOT closure of the crossing. Id. at 2.  Further, Plaintiff suggests that discovery is appropriate to

identify the role of CSXT in the DOT's review process and to determine whether CSXT breached

an implied obligation of good faith and fair dealing in the order. Id. at 2-3.

These arguments are grounded upon a purported conflict between the requirements of the 1989 Order and CSXT's actions with respect to the DOT's closure of the crossing; however, no such conflict exists.  The order and stipulation stated that "future maintenance of the crossing shall be the responsibility of Conrail," which is only susceptible to a reading that Conrail and its successors are obliged to generally keep the crossing in working order at their own expense. Response at 4 (quoting Buono Affidavit, Exhibit 6 (Stipulation, dated October 3, 1988)).  Thus, as long as the crossing exists, there is an enforceable order that CSXT must keep that crossing in good repair.  Had the New York DOT never undertaken its review of railroad crossings and never determined that the crossing must be closed for reasons of public safety, that obligation would continue.  However, it is unreasonable to interpret the 1989 Order as commanding CSXT to not yield to New York's exercise of its police power to ensure public safety on its railways.  There is absolutely no evidence in support of the position, or reason to believe, that the 1989 Order contemplated covering an obligation to oppose the exercise of state power affecting the usage or existence of the crossing; it simply allocated the burden of maintenance in a dispute between two private parties.

Per § 97 of the Railroad Law, private crossings such as the one at issue are validly subject to regulation and extinguishment by the State of New York.  See Island Park v. CSX Transp., Inc., 559 F.3d at 104; Matter of Island Park, 61 A.D.2d at 1024.  The terms of the 1989 Order, limited in scope to imposing maintenance obligations between the litigants, simply cannot be understood to even raise a question as to whether the order should somehow override subsequent legislative action enabling precisely the exercise of state police power undertaken in terminating the crossing used by the Plaintiff.  This Court need not reach such a tenuous claim because the premise that the 1989

Order conflicts with the DOT closure of the crossing is fatally flawed.  The DOT, in accord with its prescribed procedures and powers, terminated the crossing, and the 1989 Order imposed on CSXT no duty to have resisted that state action.

Further, while the 1989 Order does not require CSXT to take action inconsistent with the DOT's decision, the DOT's decision effectively nullifies the obligation of CSXT to maintain the crossing.  The State's determination to close the crossing and its directives to CSXT for the removal of crossing materials and the erection of barricades, made pursuant to that determination, clearly conflict with CSXT's maintenance responsibilities under the 1989 Order.  The maintenance responsibilities must give way.  The State has terminated the existence of the crossing, and in the absence of that crossing, CSXT cannot have any duty to maintain it.  The DOT decision, as a valid exercise of the State's police powers made subsequent to the 1989 Order, supercedes the 1989 Order to the extent that the prior Order requires inconsistent action.  See Galante v. Mineola Ford Sales, Ltd., 160 A.D.2d 758 (2d Dept. 1990) (party could not prevent enforcement of judgment disallowing use of certain property after changed circumstances and new zoning code altered the permissible uses).  Accordingly, it is appropriate to grant declaratory judgment to Defendants on this matter.

Plaintiff's Fourth Claim poses the argument that the 1989 Order prevents the Defendants from lawfully closing the contested railroad crossing. For purposes of resolution at the present time, this claim is essentially a legal question. As a matter of law, because there is no possibility for Plaintiff to prevail on the claim, it would be inappropriate and futile to allow discovery.  Plaintiff does not point to any issue as to material facts in its instant claim.  Instead, Island Park contends that discovery is necessary to identify what measures are needed to render the crossing "safe" and what

6

role CSXT played in DOT's decision-making process.  Response at 2-4.  These arguments are

irrelevant and, to the extent they seek to challenge the DOT's determination, improper.

      First, an inquiry into what measures might make the crossing "safe" can serve no function in

support of Plaintiff's claim.  A substantive evaluation of the safety of the crossing and the feasibility

of new measures was conducted at a hearing before an Administrative Law Judge and was reviewed

and upheld by the New York State Supreme Court, Appellate Division, Third Department.  The

court stated that "[g]iven the evidence of the hazardous configuration of Abele's Crossing, the

absence of any remedial measure that would adequately address those dangers and the potentially

catastrophic effects of a collision or derailment involving a high-speed passenger train, we conclude

that DOT's concerns are real and legitimate and its determination to close the crossing is supported

by substantial evidence."  Matter of Island Park, 61 A.D.3d at 1027.  The question of whether the

1989 Order may prevent the closure of the crossing is the only question before this Court, and it has

already been answered in the negative because the 1989 Order itself does not conflict with DOT

decision, and the DOT decision nullifies CSXT's maintenance obligations. Thus further inquiry into

the possibility of safety measures cannot have any material bearing on answering the legal question

of the 1989 Order's effect. It appears, nonetheless, that Plaintiff seeks to explore the availability of

safety devices that would permit the crossing to continue to operate.  Again, because of the limited

scope of the 1989 Order (namely, to "maintenance") and the superceding effect of the DOT decision

pursuant to Railroad Law § 97, no information about safety measures could be of any use to

resolving Plaintiff's claim.  It should go without saying that the claim based on the 1989 Order

cannot provide a platform by which to review the DOT's decision.

      Similarly, any discovery as to the "role CSX played" in the DOT's review and closure of the

crossing can have no impact on the answer to the question posed by Plaintiff's claim.  Response at

3.  It is unclear why Plaintiff seeks such discovery, but CSXT's compliance with the DOT closure

process does not inform the analysis of the legal effect of the 1989 Order on the DOT's decision.

As explained above, the 1989 Order cannot be read to impose an obligation to resist the DOT

review and closure process or to impose any other duty to act beyond its stated terms.  If the

Plaintiff means to allege some breach of integrity of the DOT decision-making process that would

draw into question the DOT's judgment, the present proceeding does not afford an opportunity to do

so, and it should be noted, the DOT's judgment was upheld in state court.  See generally Matter of

Island Park, 61 A.D.3d at 1023.  Plaintiff thus fails to make a sufficient showing as to the existence

of issues of material fact.  As a matter of law, Defendants must prevail with respect to Plaintiff's

remaining claim.


**III.    CONCLUSION**

        Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 96 ) is **GRANTED** on Plaintiff's fourth claim; and it is further

**ORDERED**, that summary judgment is **GRANTED** in favor of Defendants on Plaintiff's pre-emption claim; and it is further

**ORDERED** that Defendants' Motion for Declaratory Judgment (Dkt. No. 96) is **GRANTED** as to the following: that there is no conflict between the terms of the 1989 Order and the DOT Order, that the 1989 Order does not prohibit their compliance with the terms of the DOT Order, and that the 1989 Order is superseded by the DOT Order to the extent that the 1989 Order imposes any obligations inconsistent with the DOT Order; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copies of this Order on all parties.

**IT IS SO ORDERED.**

DATED: January 22, 2010
        Albany, New York

Lawrence E. Kahn
U.S. District Judge